**Erie Zoning Board of Adjustment v. Seelinger**

*Clifford Kahn*, for appellant.

*Robert H. Chase*, for appellee.

LAUB, J., July 26, 1963.—This is an appeal from the decision of the Zoning Board of Adjustment of the City of Erie granting a certificate of occupancy to Sam J. Seggi, permitting him to use a vacant lot for business parking. The lot in question is located in Davenport Subdivision, an area which is generally zoned as "B" residential and which, with the exception of the area fronting on Peach Street which is zoned for business, and another parcel on an intersecting street which was rezoned for the erection of an office building, contains many fine homes and residences.

West Thirty-ninth Street is a short residential street running in a general east-west direction behind Seggi's place of business, which is located on Peach Street. There are no homes on the north side of Thirty-ninth Street but there are homes on the south side as well as along both sides of the north-south streets which run into Thirty-ninth Street from the south. The lot for which the certificate of occupancy was issued is situated on the north side of Thirty-ninth Street.

No testimony was taken at the hearing before the zoning board of adjustment, and all that the record before us discloses is that the parties in interest stated their positions to the board, appellants raising objections to the variance and Seggi, through his counsel, stating what he intended to do with the lot if the variance was permitted. After conducting the hearing in this fashion, the board issued a certificate of occupancy for one year, providing that an effective barricade and shrubbery be placed on Thirty-ninth Street to prevent through vehicular traffic and to present a neat appearance.

From the meager record before us, the facts are these:

Applicant acquired his business property on Peach Street in 1954, and acquired the Thirty-ninth Street lot in 1961. At the time of the latter acquisition, the property had already been zoned residential, a fact which applicant sought to change by applying to city council for rezoning. This application was refused, but applicant, nevertheless, proceeded to bulldoze a roadway across the lot and to use it for parking purposes connected with his business. He then applied directly to the board for a certificate of occupancy, which was granted, and this appeal followed.

In describing the functions of the zoning board of adjustment, the Third Class City Code, Act of June 23, 1931, P. L. 932, sec. 4122, as amended, 53 PS §39122, provides that the board may authorize, on appeal, in specific cases, such variance from the provisions of the zoning ordinance as will not be contrary to the public interest, but will observe the spirit of the ordinance and achieve substantial justice where, because of special conditions, a literal enforcement would result in unnecessary hardships. The city ordinance is substantially identical, although the language used is somewhat different. It provides for the issuance of a variance on appeal provided such variance "shall remain in harmony with the general purpose and intent of this ordinance so that the health, safety and general welfare of the community shall be conserved and substantial justice done." Only a casual scrutiny of the record in this case is needed to observe that neither the statute nor the ordinance were obeyed by the board.

Applicant for the variance well knew when he acquired the Thirty-ninth Street property that he was buying land in an area zoned for residential purposes. In this respect then, he was on the same footing as the home owners in the locality who were entitled to rely

on the integrity of the ordinance in establishing their homes in the community. The city council, by a unanimous vote, were in accord that this area should not be used for business purposes and rejected applicant's plea for rezoning, thus indicating the council's feeling that business uses should not encroach further into the residential nature of the neighborhood. In consequence, and under the provisions of the statute and the ordinance, the board of adjustment could not authorize a variance except upon proof of "special conditions" where enforcement of the ordinance would result in "unnecessary hardships." What were the special conditions and unnecessary hardships in this case which counterbalanced the public interest in maintaining the integrity of the area? The most that this record can support is that applicant has eight or nine vehicles which he would rather park in the rear of his business property than on one of the side streets where parking is permitted. To provide for his own convenience and the convenience of his customers, he would convert his property into a business parking lot, thus making a further encroachment upon the residential nature of the community and creating another factor which, in later years, would inevitably result in destroying the neighborhood's character completely. Experience with variances, rezoning and other zoning practices has demonstrated that once the breach is made in the dyke, it is virtually impossible to stem the tide of encroaching business on solidly residential neighborhoods. Zoning is authorized for a highly desirable purpose, that of confining certain areas of our liberties to definite social purposes. Zones are created after much study and deliberation, and citizens have learned to rely upon zoning in the making of plans for their future homes and businesses, and, as a result, the settled course should not be disturbed except for the most compelling reasons. It seems unnecessary to state

at this point that the matter of mere inconvenience in parking is not such a compelling reason as to place a situation within the terms "special conditions" and "unnecessary hardships" as mentioned in the statute. The board, with scarcely a nod toward the rights of the nearby residents, concluded that the inconvenience of parking experienced by the applicant counter-balanced the public interest and, in doing so, the board committed an abuse of discretion and an error of law which requires a reversal of its decision.

Two other matters appearing in this case require comment. The first of these is that neither the statute nor the ordinance authorizes the board of adjustment to grant variances ab initio. In both instances, variances are permitted only on appeal from the action of an administrative official charged with the function of administrating the zoning ordinance. From the record before us it seems apparent that the application was made directly to the board without a previous determination by the zoning administrator. True, the application was made on a form designed for presentation to such an administrator, but the facts show that the application was directly to the board without more. In fact, in the application form where the zoning administrator is supposed to certify the reason for his actions, no signature appears thereon. While it might appear innocuous to bypass the administrator and apply directly to the board, such is not the case. As noted before, zoning is a matter of extreme importance and interest to the general public and to the residents or users of a zoned locality. It was the intention of the legislature that, in the protection of that interest, the parties are entitled to the judgment, experience surveys and studies made by an administrator charged with the duty of keeping a watchful eye over zoning practices. Therefore, the duties of such an officer are not mere trappings to be lightly ignored, and boards of ad-

justment are not authorized to act on their own without the benefit of whatever the administrator has to offer. For this reason, the board's action in this case was clearly illegal and unauthorized by either the ordinance or the enabling statute.

The other matter deserving of comment is the circumstance that applicant, after having been refused the zoning change, proceeded on his own to bulldoze out a parking lot and entrance to Thirty-ninth Street in clear violation of the zoning ordinance. This lot and entrance were used by vehicles to the hazard of small children on Thirty-ninth Street prior to the application for a variance. The Zoning Ordinance of the City of Erie prohibits the use of land in violation of zoning regulations prior to action on an application for a certificate of occupancy, yet this provision of the law was ignored completely. A certificate of occupancy cannot issue under the ordinance at a time when the land is improperly used, and, therefore, the certificate in this case was illegally issued.

And now, July 26, 1963, the exceptions to the zoning board of adjustment's grant of a certificate of occupancy are sustained, the appeal is sustained and the certificate of occupancy is set aside.

This order shall become final unless exceptions thereto are filed within 15 days.